IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT J. MURPHY, ESQUIRE, Individually and on behalf of all others similarly situated, | : : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 17-1239 |
| v. | : : | |
| OFFICE OF DISCIPLINARY COUNSEL, PAUL J. KILLION, ESQ., Chief Disciplinary Counsel, in his official capacity and in his individual capacity; MICHAEL GOTTSCH, ESQ., in his official capacity and in his individual capacity; RICHARD HERNANDEZ, ESQ., in his official capacity and in his individual capacity; ANTHONY SODROSKI, ESQ., in his official capacity and in his individual capacity; MARK GILSON, ESQ., in his official capacity and in his individual capacity; STEWART L. COHEN, ESQ., in his official capacity and in his individual capacity; DION RASSIAS, ESQ., in his official capacity and in his individual capacity; JANE G. PENNY, ESQ., in her official capacity and in her individual capacity; JERRY LEHOCKY, ESQ., in his official capacity and in his individual capacity; DAVID FITZSIMONS, ESQ., in his official capacity and in his individual capacity; BRIAN CALI, ESQ., in his official capacity and in his individual capacity; and THE DISCIPLINARY BOARD OF THE SUPREME COURT OF PENNSYLVANIA, | : : : : : : : : : : : : : : : : : : : : : : : : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Smith, J.                                                      September 30, 2019

The *pro se* plaintiff is an attorney currently in the midst of disciplinary proceedings in the Commonwealth of Pennsylvania. He has filed a second amended complaint in which he attempts to assert various constitutional claims under 42 U.S.C. § 1983 against the office prosecuting his disciplinary action, disciplinary counsel, the state disciplinary board, and members of the board. He seeks injunctive relief (for which he has filed a motion for a preliminary injunction), declaratory relief, and monetary damages.

The defendants have moved to dismiss the second amended complaint, essentially arguing that, *inter alia*, (1) this court should abstain from resolving the claims in this case based upon *Younger v. Harris*, 401 U.S. 37 (1971), (2) the Eleventh Amendment bars any claims (a) against the office of disciplinary counsel and the disciplinary board, (b) for declaratory relief, and (c) for monetary damages against the individual defendants in their official capacities, (3) absolute prosecutorial immunity, quasi-judicial immunity, and judicial immunity bar any individual capacity claims for damages against the individual defendants, (4) the plaintiff has failed to assert a plausible claim for a violation of his rights under the First, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and (5) the defendants are absolutely immune from any potential state law claims.

The court previously determined that abstention is necessary here under *Younger* when the plaintiff previously moved for a preliminary injunction, and nothing that the plaintiff asserts in his second amended complaint or in his brief in opposition to the motion to dismiss changes this determination. Thus, the court must abstain from resolving the plaintiff's claims for injunctive and declaratory relief. In addition to abstaining from these claims, the Eleventh Amendment bars the

plaintiff's federal causes of action against the office of disciplinary counsel and the disciplinary board as well as any federal claims for monetary damages against the individual defendants in their official capacities. The court also finds that the doctrines of absolute prosecutorial immunity bars most of the claims against the individual disciplinary counsel defendants and quasi-judicial immunity bars the claims against the individual defendants. Further, the plaintiff has failed to state a plausible claim for relief for any constitutional violation.

While the court does not agree with all the defendants' arguments in support of dismissal, the court grants portions of the motion which result in the ultimate dismissal of all causes of action in the second amended complaint. The court will not provide the plaintiff with leave to file another amended complaint because doing so is futile. The court will also deny the plaintiff's motion for temporary and preliminary injunctive relief.

## I.    ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, Robert J. Murphy, Esquire ("Murphy"), on his own behalf and purportedly on behalf of all others similarly situated, originally commenced this action by filing a complaint on March 20, 2017. Doc. No. 1. The original defendants named in the complaint included: (1) Paul J. Killian, Esquire ("Killion"),[1] Chief Disciplinary Counsel of the Office of Disciplinary Counsel, in his official capacity; (2) Michael Gottsch, Esquire ("Gottsch"), in his official capacity; (3) the Disciplinary Board of the Supreme Court of Pennsylvania (the "Board"); (4) Jane G. Penny, Esquire ("Penny"), Chairperson of the Disciplinary Board of the Supreme Court of Pennsylvania, in her official capacity; and (5) Julia Frankston-Morris, Esquire ("Frankston-Morris"), Secretary of the Disciplinary Board of the Supreme Court of Pennsylvania. *See* Compl.

---

[1] Murphy has misspelled this defendant's last name, *see* https://www.padisciplinaryboard.org/about/leadership (showing name as "Paul J. Killion, Esquire"). The court will use the correct spelling in this opinion.

at 1–2, Doc. No. 1. Murphy's claims in the complaint arise out of his attorney disciplinary proceedings that were ongoing in the Commonwealth of Pennsylvania. *See generally id.* at 14–26.

The named defendants filed a motion to dismiss the complaint and a motion to file the motion to dismiss under seal on April 4, 2017. Doc. Nos. 3, 4. Through a stipulation by the parties, Murphy filed a "corrected" amended complaint on April 27, 2017. Doc. Nos. 7-8. In the amended complaint, Murphy named as defendants: (1) The Office of Disciplinary Counsel ("ODC"); (2) Killion, in his official and individual capacities; (3) Gottsch, in his official and individual capacities; (4) the Board; (5) Penny, in her official and individual capacities; and (6) Frankston-Morris, in her official and individual capacities.[2] Corrected Am. Compl. at 1–2, Doc. No. 8.

---

[2] In the introductory sentence of the amended complaint, Murphy, an attorney who has been licensed to practice law in Pennsylvania for approximately 46 years, generally described his claims in a single run-on sentence as follows:

> [T]he above named plaintiff, Robert J. Murphy, Esq., (hereinafter plaintiff) is a citizen of the United States and hereby files the following amended complaint in [sic] his behalf and for all others similarly situated against defendants and each of them in their individual and official capacities acting under color of state law seeking legal and equitable relief including but not limited to declaratory and prospective relief, nominal, compensatory and punitive damages, equitable, permanent, prospective and preliminary injunctive relief and/or a temporary restraining order including involving defendants' continuous and ongoing unlawful, wrongful and deliberate violations and deprivation of the clearly established and well settled fundamental rights of plaintiff and all others similarly situated guaranteed by the United States Constitution Amendment 1, 5, 6, 14, The Declaratory Judgment Act 28 U.S.C.A. Section 2201 et. seq., Civil Rights Act, 42 Pa. C.S.A. 1983 et seq., and applicable law, inter alia, to prevent continuing actual and immediate irreparable prejudice to plaintiff and all others similarly situated caused by defendants' unconstitutional, bad faith, frivolous, willful, flagrant, wholesale, wrongful and intentional misconduct, policies, plans, customs, practices, actions or omissions involving defendants' unconstitutional Disciplinary Enforcement and Board Rules, investigation, disposition and discipline proceedings against plaintiff and all others similarly situated constituting facial and/or as applied violation and deprivation of their clearly protected fundamental constitutional and legal, equitable and civil rights to life, liberty, or property, and their rights, privileges and immunities without due process of law including but not limited to free speech, right of association, redress of grievances, reputation, right to confidentiality, substantive and procedural due process and equal protection of the law, and a speedy fair and impartial trial and judicial review including evidentiary hearing by a competent judicial tribunal guaranteed under the 1st, 5th 6th and 14th Amendments to the United States Constitution and applicable federal law and decisions including but not limited to 28 U.S.C.A. [§] 2201, 42 U.S.C.A. [§] 1983 directly and proximately causing irreparable and immediate injury and damages to plaintiff and all others similar situated.

Corrected Am. Compl. at 2–3.

On May 9, 2017, the named defendants filed a motion to dismiss the amended complaint.[3] Doc. No. 11. Murphy filed a response in opposition to the motion to dismiss on June 5, 2017. Doc. No. 16.

On November 1, 2017, Murphy filed a motion for an emergency temporary restraining order or a preliminary injunction. Doc. No. 17. The court held a telephonic hearing on this motion for injunctive relief on November 3, 2017, after which the court denied the motion. Doc. Nos. 19, 20. Murphy filed a notice of appeal from the court's denial of his motion for injunctive relief to the Third Circuit Court of Appeals on December 1, 2017. Doc. No. 21. This court filed a written amplification of a prior written or oral recorded ruling or opinion as provided by Third Circuit Local Appellate Rule 3.1 on January 2, 2018.[4] Doc. No. 24.

While the case was on appeal with the Third Circuit, Murphy filed a motion titled:

PLAINTIFF'S EMERGENCY MOTION TO RECONSIDER AND VACATE, AND ALTER, AND AMEND COURT'S ORDERS INCLUDING ORDER TO PLACE THE CAPTIONED MATTER IN CIVIL SUSPENSE AND STAY THE CAPTIONED MATTER, AND ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND IMMEDIATELY SCHEDULE AN EMERGENCY EVIDENTIARY PRELIMINARY INJUNCTION HEARING, AND GRANT A TEMPORARY RESTRAINING ORDER, AND GRANT A PRELIMINARY INJUNCTION, AND GRANT A PERMANENT INJUNCTION, AND/OR ADVISE THE APPELLATE COURT THAT THIS COURT WOULD GRANT THE WITHIN MOTION OR THAT THE WITHIN MOTION RAISES A SUBSTANTIAL ISSUE, AND ENTER SUCH OTHER ORDERS AS ARE WARRANTED IN THE INTEREST OF JUSTICE TO PREVENT CONTINUING SERIOUS AND IRREPARABLE PREJUDICE

---

[3] The defendants argued that the court should dismiss the amended complaint with prejudice because (1) *Younger* abstention precluded Murphy's claims about his on-going disciplinary case, (2) the Eleventh Amendment precluded Murphy's claims for non-prospective relief and all claims against the ODC and the Disciplinary Board, (3) the amended complaint failed to state a claim for (a) a procedural or substantive due process violation, (b) violations of the First, Fifth or Sixth Amendments, (c) violations of Murphy's privileges and immunities or equal protection, (4) the amended complaint fails to state a claim against the individual defendants, Killian, Gottsch, Penny, and Frankston-Morris, (5) the individual defendants have various judicial and quasi-judicial immunities, and (6) the defendants have immunity under 1 Pa. C.S. § 2310 to the extent that Murphy is asserting state law claims. Br. in Supp. of Defs.' Mot. to Dismiss the Am. Compl. at 7–29, Doc. No. 11.

[4] This Rule provides that "[n]o later than 30 days after the docketing of a notice of appeal, the trial judge may file and transmit to the parties a written opinion or written amplification of a prior written or oral recorded ruling or opinion." 3d Cir. R. 3.1.

TO THE PLAINTIFF AND ALL OTHER SIMILARLY SITUATED PENNSYLVANIA ATTORNEYS PURSUANT TO F.R.A.P. 8(A) (C), 12.1, F.R.C.P. 62(c) (g) (1), 62.1 AND APPLICABLE LAW AND JUSTICE.

Doc. No. 28. On July 13, 2018, the court entered an order denying this motion. Doc. No. 29. Murphy then filed a notice of appeal from this order on August 9, 2018. Doc. No. 30.

In October 2018, Murphy voluntarily dismissed his appeals under Rule 42(b) of the Federal Rules of Appellate Procedure. Doc. No. 32. This court then held a telephone conference with the parties on October 16, 2018, after which the court entered an order which, *inter alia*, gave Murphy 30 days to file a second amended complaint. Doc. Nos. 34, 35. Murphy timely filed a second amended complaint on November 15, 2018. Doc. No. 36. In the second amended complaint, Murphy once again asserts claims against the ODC, Disciplinary Board, Killion, Gottsch, and Penny, but he now also asserts claims against Richard Hernandez, Esquire ("Hernandez"), Antony Sodroski, Esquire ("Sodroski"), Mark Gilson, Esquire ("Gilson"), Stewart L. Cohen, Esquire ("Cohen"), Dion Rassias, Esquire ("Rassias"), Jerry LeHocky, Esquire ("LeHocky"), David Fitzsimons, Esquire ("Fitzsimons"), and Brian Cali, Esquire ("Cali").[5] Pl.'s 2d Am. Compl. Pursuant to the Court's Oct. 16, 2018 Order ("2d Am. Compl.") at 1–3, Doc. No. 36.

The defendants filed a motion to dismiss the second amended complaint on November 30, 2018. Doc. Nos. 38, 39. Murphy filed a response in opposition to the motion on December 21, 2018. Doc. No. 40. Murphy then filed a motion for a temporary restraining order and a preliminary injunction on February 1, 2019, which the defendants responded to on February 13, 2019. Doc. Nos. 42, 43.

---

[5] Murphy appears to have dropped Frankston-Morris as a defendant.

## II.    DISCUSSION

### A.    Background

#### 1.    The ODC, Disciplinary Board, and General Procedures for Disciplinary Proceedings

The Pennsylvania Supreme Court and the Disciplinary Board have exclusive jurisdiction over attorney disciplinary issues involving, among others, "[a]ny attorney admitted to practice law in th[e] Commonwealth of Pennsylvania." Pa. R.D.E. 201(a)(1); *see Bauer v. Pa. State Bd. of Auctioneer Examiners*, 154 A.3d 899, 904 (Pa. Commw. 2017) (citing to Pa. Const. art. V, § 10(c), which states: "The Supreme Court shall have the power to prescribe general rules . . . for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the Judicial Branch."). The ODC is responsible for, *inter alia*, "investigat[ing] all matters involving alleged misconduct called to their attention whether by complaint or otherwise." Pa. R.D.E. 207(b)(1); Pa. Disciplinary Bd. R. 93.63(a)(1). The ODC may also "prosecute all disciplinary proceedings before hearing committees, special masters, the Board and the Supreme Court." Pa. Disciplinary Bd. R. 93.63(a)(3).

After the filing of a complaint of misconduct against an attorney, ODC will investigate the allegations in the complaint. *See* Pa. Disciplinary Bd. R. 87.5("[A]ll investigations, whether upon complaint or otherwise, shall be initiated and conducted by Disciplinary Counsel."); Pa. R.D.E. 208(a)(1) (same). ODC will then notify the attorney identified in the complaint (via Form DB-7), who then can respond by submitting a "statement of position."[6] Pa. Disciplinary Bd. R. 87.7(b).

---

[6] A DB-7 Form, a "Request for Statement of Respondent's Position," advises the attorney of:

(1) the nature of the grievance and if the investigation has not been initiated by the Office of Disciplinary Counsel pursuant to § 87.1(b) (relating to initiation of investigations), the name and address of the complainant; and

(2) the requirement that the respondent-attorney respond to the allegations against the respondent-attorney by filing with the district office a statement of position. Unless a shorter time is fixed by

ODC can then either dismiss the complaint, recommend an informal proceeding (such as an admonishment or reprimand, or decide to proceed with formal charges against the attorney before a hearing committee or special master.[7] *See* Pa. Disciplinary Bd. R. 87.8 (setting forth ODC's options after concluding investigation into allegations of complaint); Pa. R.D.E. 208(a)(2) (same). An attorney dissatisfied with an informal resolution (such as an informal admonition, a private reprimand, or a public reprimand), can demand a formal proceeding. *See* Pa. Disciplinary Bd. R. 87.54(a) ("[I]n cases where no formal proceeding has been conducted, a respondent-attorney . . . may demand as of right that a formal proceeding be instituted against such attorney[.]"); Pa. R.D.E. 208(a)(6) (same).

ODC institutes formal disciplinary proceedings by filing a "petition setting forth with specificity the charges of misconduct" with the Disciplinary Board. Pa. Disciplinary Bd. R. 89.51, 89.52; Pa. D.R.E. 208(b)(1). After the attorney answers the petition, the Board assigns the matter to a "hearing committee or a special master." Pa. Disciplinary Bd. R. 89.56(a); Pa. R.D.E. 208(b)(4). The special master or hearing committee then holds a hearing where "[t]he respondent-attorney and staff counsel shall have the right of presentation of evidence, cross-examination, objection, motion and argument." Pa. Disciplinary Bd. R. 89.93(a). After the hearing, the attorney and ODC may file briefs and present oral argument. Pa. Disciplinary Bd. R. 89.161, 89.162. The special master or hearing committee then "submit[s] a report to the Board containing the findings and recommendations of the committee or special master." Pa. Disciplinary Bd. R. 89.171; Pa. R.D.E. 208(c).

---

the Chief Disciplinary Counsel in such notice, the respondent-attorney shall have 30 days from the date of such notice within which to file a statement of position in the district office.

Pa. Disciplinary Bd. R. 87.7(b).

[7] Unless the ODC dismisses a complaint as frivolous, a "member of a hearing committee in the appropriate disciplinary district" must review ODC's recommended disposition of the complaint. Pa. Disciplinary Bd. R. 87.32(a); Pa. D.R.E. 208(a)(3).

The Disciplinary Board conducts a de novo review of the report by the hearing committee or special master, and the parties can submit briefs and make oral argument before the Disciplinary Board. Pa. Disciplinary Bd. R. 89.201; Pa. R.D.E. 208(d)(1). The Disciplinary Board can then (1) dismiss the proceeding, (2) impose informal admonition, private reprimand, or public reprimand, or (3) impose other discipline such as probation, censure, suspension, or disbarment. Pa. Disciplinary Bd. R. 89.203–205; Pa. R.D.E. 208(d). An attorney can then appeal from the Board's decision to the Pennsylvania Supreme Court, which then conducts a de novo review of the matter. Pa. Disciplinary Bd. R. 89.207; Pa. R.D.E. 208(e); *see Office of Disciplinary Counsel v. Christie*, 639 A.2d 782, 783 (Pa. 1994) ("In attorney discipline cases, our review is *de novo*; we are not bound by the findings of the hearing committee or the board." (citation omitted)). Although the Court conducts a de novo review, the Court "give[s] substantial deference to the findings and recommendations of the board." *Christie*, 639 A.2d at 783 (citations omitted).

## 2. Murphy's Disciplinary Proceedings[8]

In 2011, the ODC received two ethical complaints against Murphy seemingly arising from Murphy's accusations of administrative misconduct against two Pennsylvania Workers' Compensation Judges. *See* Corrected Am. Compl. at ¶ 34; *see also* Pl.'s Br. Sur Pl.'s Resp. and Exs. in Opp. To Defs.' Mot. to Dismiss Pl.'s Second Am. Compl. Pursuant to F.R.C.P. 12(b)(1)(6) and Court's Order ("Pl.'s Br."), Doc. No. 40 at 5–8 (discussing Murphy's issues with Workers'

---

[8] Unfortunately, despite the parties' references to the procedural history of the underlying disciplinary proceedings in various prior submissions in this action (some of which include Murphy's issues with various aspects of those proceedings), the second amended complaint is relatively thin on facts and full of legal assertions and conclusions. To provide some sort of context for Murphy's allegations, the court has added this section about the case background. Except as otherwise referenced in the court's summary of Murphy's allegations in the second amended complaint, the court has not considered this information in resolving the motion to dismiss because the information is not found in the complaint, any exhibit attached to the complaint, or a matter of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

Compensation Judges Bachman and Hagan). In August 2012, ODC sent Murphy a DB-7 notice of

the two complaints. *See* Corrected Am. Compl. at ¶ 35.

On August 28, 2012, Murphy submitted a response to the DB-7 notice in which he objected

to

> the Disciplinary Board's proceedings including its alleged jurisdiction regarding
> the inaccurate allegations in the so-called DB-7 letter involving related and/or
> identical matters which are presently pending on the merits in various related and/or
> identical administrative, trial and appellate tribunals involving voluminous
> proceedings and records extending over twenty-five years including the Workers'
> Compensation Appeal Board A11-0879, A12-0122, Montgomery County Court of
> Common Pleas 2009-11886, 2009-36677, 2010-30744, 2010-35625, 2010-33088,
> 2012-19984, Commonwealth Court 385 MD 2010, 935 MD 2010, 661 CD 2011,
> 855 CD 2011, Supreme Court 70 MAP 2010, 51 EAP 2011, inter alia, over which
> this court clearly lacks jurisdiction and creates an actual and/or potential conflict
> involving the foregoing matters which are the subject of the DB-7 Request for
> Statement.

Br. in Supp. of Defs.' Mot. to Dismiss the Am. Compl. ("Defs.' Br. in Supp. of Mot. to Dismiss

Am. Compl."), Ex. A ("DB-7 Resp.") at 1, Doc. No. 11. In this response, Murphy also "at a

minimum, . . . request[ed] that the alleged DB-7 request/investigation be abated, suspended, and/or

deferred pursuant to applicable law including Rule of Disciplinary Enforcement 211(a) and

Disciplinary Board Rule 87.72 to prevent continuing irreparable prejudice to the parties, the

litigants, the public and the undersigned." DB-7 Resp. at 2.

Murphy filed a supplemental DB-7 response via a letter dated September 27, 2012. Defs.'

Br. in Supp. of Mot. to Dismiss Am. Compl., Ex. B. In this response, Murphy

> reiterate[d] our request that the captioned proceedings/investigation be abated,
> suspended, and/or deferred pursuant to applicable law including Rule of
> Disciplinary Enforcement 211(a) and Disciplinary Board Rule 87.72 to prevent
> continuing irreparable prejudice to the parties, the litigants, the public and the
> undersigned because all the inaccurate and outrageous allegations, proceedings and
> matters which are the subject of alleged violations upon which the original and
> amended DB-7 request for statements specifically involve pending proceedings
> within the exclusive jurisdiction of the appropriate administrative trial and appellate
> tribunals and over which this Board clearly lacks power, authority or jurisdiction

and which creates actual and potential conflicts including final adjudications of all the pending proceedings and the so-called DB-7 and amended DB-7 request for statement of respondent's positions contrary to applicable law and the foregoing Disciplinary Enforcement Rule and Board rule, inter alia.

*Id.* at 1–2.[9] Murphy also requested that the ODC abate the matter because "the identical matters are proceeding on the merits before the administrative trial and appellate tribunals which have exclusive jurisdiction thereof."[10] *Id.* at 3.

In May 2013, the ODC filed a petition to defer the disciplinary proceedings pending the final judgment in the corresponding workers' compensation proceedings. *See* Corrected Am. Compl. at ¶¶ 38–40; Pl.'s Br. at 11. On August 1, 2013, the Disciplinary Board granted the petition to defer the proceedings over Murphy's objections and request for oral argument. *See* Corrected Am. Compl. at ¶¶ 39, 40 & Ex. 1, Order; Pl.'s Br. at 11. The Disciplinary Board indicated that good cause existed to defer the disciplinary proceedings "because the material allegations of the disciplinary complaint against [Murphy] substantially overlap with the facts and issues involved in a matter currently pending before the Workers' Compensation Appeal Board, the outcome of which may be useful to the parties herein." Corrected Am. Compl., Ex. 1, Order. The order also stated that the Disciplinary Board would defer the proceedings

> pending the decision of the Workers' Compensation Appeal Board in the matter captioned *Wilson v. Honeywell, Inc. (formerly Allied Signal), Travelers Insurance Company, Commonwealth of Pennsylvania Department of Labor and Industry*, Bureau Claim No. 3240923, Case No. A11-0879, and the deferment shall continue to the conclusion of any subsequent appeal of that decision to an appellate court of this Commonwealth.

*Id.*

---

[9] It appears that the DB-7 Form and its amendment are attached to Murphy's response to the current motion to dismiss. *See* Pl.'s Br., Ex. 2.

[10] Rule 211 of the Pennsylvania Rules of Disciplinary Enforcement allows for a deferment of the processing of complaints relating to alleged violations of the Pennsylvania Rules of Professional Conduct if the complaint "involv[es] material allegations which are substantially similar to the material allegations of pending criminal or civil litigation" and good cause is shown. Pa. R.D.E. 211(a); *see also* Pa. Disciplinary Bd. R. 87.72(a).

In July 2016, the ODC moved to rescind the August 2013 deferral order. *See* Corrected Am. Compl. at ¶¶ 42–43 & Ex. 2, Order; Pl.'s Br. at 11. On August 16, 2016, Penny signed an order on behalf of the Disciplinary Board, which granted the motion to rescind over Murphy's objections and request for oral argument. *See* Corrected Am. Comp. at ¶¶ 43-44 & Ex. 2; Pl.'s Br. at 11. The ODC eventually brought formal charges of professional misconduct against Murphy in December 2016.[11] Corrected Am. Compl. at ¶ 47; Defs.' Br. in Supp. of Mot. to Dismiss Am. Compl., Ex. C, Pet. for Discipline; Pl.'s Br. at 12. The formal petition generally asserts that Murphy made false allegations of improper, *ex parte* communications against two workers' compensation judges and counsel for an opposing party. *See* Pet. for Discipline at 2; Pl.'s Br. at 12–13.

Murphy's disciplinary hearing proceeded before a hearing committee in November 2017. Pl.'s Emergency Mot. to Recons., Ex. 5, Determination of the Hr'g Comm. with Respect to Resp't's Mot. in Limine to Vacate, Strike and Dismiss the Proceedings, Records, Testimony, Exhibits, Evidence Purported Original and Am. Disciplinary Pets. and/or Stay and/or Transfer Proceedings to Another Panel ("Hr'g Comm. Decision") at 8, Doc. No. 28-6. The hearing continued into January 2018, when an issue arose over an ODC document that was not provided to Murphy and a motion *in limine* that Murphy had filed pertaining to that document. Hr'g Comm. Decision at 9–11. In April 2018, a majority of the hearing committee recommended that

> based on concerns of prejudice to [Murphy], the fact that the statement goes to the core of the charges against [Murphy], potential of bias, the status of the hearing and the continued representations by ODC that no other statements existed, . . . a mistrial be granted and the hearing proceedings, including the exchange of any and all discoverable statements, begin again with a new Hearing Committee.

*Id.* at 16.

---

[11] Gottsch signed the petition on behalf of the ODC. *See* Pet. for Discipline at 15. It is unclear what happened to Murphy informally, if anything.

In July 2018, the Disciplinary Board concluded that a new hearing was warranted and appointed Cohen as master to hold the hearing. *See* 2d Am. Compl. at ¶¶ 14, 52. According to the defendants, Cohen held hearings over multiple dates in October 2018, and the parties were anticipating submitting briefs and making oral argument before Cohen. *See* Br. in Supp. of Defs.' Mot. to Dismiss the Second Am. Compl. ("Defs.' 2d Br.") at 4, Doc. No. 38. In addition, the defendants represent that Cohen filed his report in April 2019, Murphy filed exceptions to the report, and the parties argued the matter before a three-member Disciplinary Board Panel on July 12, 2019. *See* July 22, 2019 Ltr., Doc. No. 45. "The full Board will adjudicate the matter and file a report and recommendation with the Supreme Court of Pennsylvania within 60 days of the adjudication date."[12] *Id.*

## B.    The Allegations in the Second Amended Complaint

As with the original and "corrected" amended complaint, Murphy appears to summarize all his claims early (in a single, run-on sentence) in the second amended complaint:

> [P]laintiff hereby files the following second amended complaint in [sic] his behalf and for all similarly situated persons including all Pennsylvania attorneys against defendants and each of them in their individual and official capacities acting under color of state law seeking legal and equitable relief including but not limited to declaratory and prospective relief, nominal, compensatory and punitive damages, equitable, permanent, prospective and preliminary injunctive relief and/or a temporary restraining order involving defendants' continuous and ongoing, unlawful, bad faith, egregious, wrongful and intentional violations and deprivation of the clearly established and well settled fundamental rights of plaintiff and all other similarly situated persons including all Pennsylvania attorneys guaranteed by the United States Constitution Amendment 1, 5, 6, 14, the Declaratory Judgment Act 28 U.S.C.A. Section 2201 et. [sic] seq., Civil Rights Act, 42 Pa. C.S.A. [sic] Section 1983 et. [sic] seq., and applicable law, inter alia, to prevent continuing great, actual, immediate and irreparable prejudice to plaintiff and all other similarly situated persons involving defendants' continuing unconstitutional, bad faith, egregious, willful, flagrant, wholesale, wrongful and intentional misconduct, policies, plans, customs, practices, actions, protocols and omissions including

---

[12] The court recognizes that Murphy objected to this letter, with his objections pertaining to his complaints about the disciplinary proceedings in general and not the accuracy of the information provided in the letter. *See* July 25, 2019 Ltr., Doc. No. 46.

involving wholesale, flagrantly and patently unconstitutional Disciplinary Enforcement Board Rules, purported investigation, determinations, orders, disposition and discipline proceedings against plaintiff and all other similarly situated persons for which there is no adequate legal remedy constituting facial and/or as applied violation and deprivation of their clearly protected foregoing fundamental constitutional, legal, equitable and civil rights to life, liberty, or property, and their rights, privileges and immunities without power, authority or jurisdiction including but not limited to: free speech; right of association; redress of grievances; timely, proper, constitutional precise and specific notice of the nature of plaintiffs [sic] alleged ethical violations; completely unconstitutional stale alleged notices, proceedings and pleadings; continual, intentional, egregious, bad faith, systematic subversion of plaintiff's and all similarly situated persons' foregoing constitutional rights; reputation; right to confidentiality; substantive and procedural due process; equal protection of the law; double jeopardy; constitutional right to a determination by the original hearing committee panel; presentation of evidence; compulsory process; confrontation and cross examination of witnesses and evidence; constitutional right to search, learn, identity [sic] and produce all favorable evidence including all oral and written statements, notes, reports and memos thereof as soon as possible (hereinafter favorable evidence); mandatory appeal rights, speedy, fair and impartial non-judicial evidentiary merits hearing; and speedy, fair and impartial trial by a competent judicial tribunal based on a full, true, complete, accurate certified original record untainted by continuing, intentional, bad faith, egregious, unconstitutional and unlawful ex-parte proceedings including right to appeal therefrom; and judicial review including fair and impartial evidentiary hearing by a competent judicial tribunal based on a full, true, complete and accurate original untainted record guaranteed under the 1st, 5th, 6[th] and 14[th] Amendments to the United States Constitution and applicable federal law and decisions including but not limited to 28 U.S.C.A. Section 2201, 42 U.S.C.A. Section 1983 directly and proximately causing continuing irreparable, great, actual, immediate injury and damages to plaintiff and all other similarly situated persons including but not limited to all Pennsylvania attorneys involving alleged ethical violations including all investigative and disciplinary petition proceedings against plaintiff and other similarly situated Pennsylvania attorneys throughout the Commonwealth of Pennsylvania.

*Id.* at 4–6.[13]

---

[13] Identifying Murphy's specific claims and factual allegations in the second amended complaint is much more difficult than necessary due to paragraphs such as this paragraph and his inability to allege facts without inserting various legal conclusions. He also fails to organize his causes of action into counts or tie in his factual allegations to any particular cause of action. No court should have to engage in this type of search for facts and claims in documents submitted by licensed counsel.

Murphy alleges that he has practiced law in state and federal trial and appellate courts in the Commonwealth of Pennsylvania for the past approximately 46 years. *Id.* at ¶¶ 4, 6. He further alleges that the ODC is

> An independent, non-judicial, auto and sui generis quasi-criminal punitive administrative agency appointed by the Disciplinary Board of the Supreme Court of Pennsylvania . . . performing autonomous, non-judicial quasi-criminal informal and formal administrative punitive functions and recommendations acting in its official capacity under color of state law[.]

*Id.* at ¶ 7. The Disciplinary Board is

> an independent, non-judicial, autonomous punitive administrative agency performing non-judicial, punitive informal and formal administrative agency non-judicial punitive functions and recommendations created by the Pennsylvania Supreme Court performing punitive administrative functions involving legislative and disciplinary proceedings . . . . [It] shall be composed of 11 members of the Bar of the Commonwealth of Pennsylvania and two non-law electors one of whom shall be designated by the Court as officers of the Board as Chair and the other as Vice Chair acting in their official and individual capacity under color of state law[.]

*Id.* at ¶ 13.

Regarding the individual defendants, Cohen is "an independent autonomous administrative agency and Master created and appointed by the Board performing administrative, non-judicial functions and recommendation involving disciplinary proceedings." *Id.* at ¶ 14. Rassias, Fitzsimons, Cali, and LeHocky are members of the Disciplinary Board. *Id.* at ¶¶ 15, 17, 23. Penny is a former member of the Disciplinary Board. *Id.* at ¶ 16. Killion is the Chief Disciplinary Counsel of the ODC. *Id.* at 1. It appears that Gottsch, Hernandez, Sodroski, and Gilson are members of the ODC. *Id.* at ¶¶ 9–12.

Despite Murphy alleging that his attorney disciplinary proceedings have been proceeding over the past seven years, *see, e.g. id.* at ¶ 20, he provides very few factual details (particularly with specific dates) relating to his proceedings, despite the parties having previously provided documents and allegations referencing this history. Instead, his second amended complaint mostly

reads as a list of issues combined with conclusory legal statements. These issues include, *inter alia*:

- The defendants' failure to prepare specific findings of fact, conclusions of law, opinions, orders, and reports and recommendations, as they were "constitutionally mandated" to do. *Id.* at ¶¶ 19, 20, 23, 24, 25.

- The defendants' failure to "review, through a designated panel of three members, and approve or modify a determination by a reviewing hearing committee member that a grievance/matter should be concluded by the institution of formal charges before a hearing committee prior to institution of formal proceedings pursuant to a disciplinary petition." *Id.* at ¶ 21.

- The defendants failed to serve him with original process in his disciplinary proceeding, No. 206 DB 2016. *Id.* at ¶¶ 5, 41.

- The defendants, including Killion, Gottsch, Gilson, Hernandez, and Sodroski, failed to perform their "mandatory constitutional duties to timely and properly complete any alleged informal investigative proceeding." *Id.* at ¶¶ 26, 27.

- The defendants failed to "perform their foregoing mandatory constitutional duties for approximately 7 years to provide timely, proper, specific and precise constitutional notice to [Murphy] of the alleged specific, stale, ethical violations by [Murphy]." *Id.* at ¶¶ 28, 29.[14]

- The defendants' denied Murphy's rights to

  compulsory process including to summon witnesses and produce records before a hearing committee or master including to present evidence, confront evidence and cross examine witnesses including to identify, learn, search and obtain all favorable evidence as soon as possible as constitutionally defined including pursuant to defendants' continuing fundamental constitutional duty to search, learn, identify and provide all favorable evidence as constitutionally defined as soon as possible including all ODC witness statements including all notes, memos and reports thereof to which [Murphy] and all similarly situated attorneys are constitutionally entitled[.]

  *Id.* at ¶¶ 30, 31.

---

[14] Murphy alleges the defendants must "immediately, timely, properly and specifically provide constitutional precise notice to all respondent-attorneys of the specific nature of the alleged grievance/alleged ethical violations and the name and address of the complainant if the investigation has not been initiated by the [ODC.]" *Id.* at ¶ 28.

- The defendants, including Cali and Cohen, throughout the proceedings, including on October 5, 2018,

  intentionally and in bad faith recommended and affirmed their purported recommended determinations without any findings of fact, conclusions of law and reports denying and depriving [Murphy] of all his foregoing fundamental constitutional rights including compulsory process, confrontation and cross examination of witnesses including ODC witnesses including granting untimely and improper alleged motions to quash subpoenas and for protective orders involving all so-called evidentiary validity challenge hearings challenging duly issued and served subpoenas duces tecum on the following witnesses including to compel their testimony, record production and appearance at evidentiary validity challenge and evidentiary merits hearings scheduled on or about October 22, 2018 including prohibiting [Murphy] from raising any and all federal constitutional violations, challenges, and issues[.]

  *Id.* at ¶ 32.

- The defendants (1) refused to timely notify him of the "specific nature of the alleged grievances;" (2) provide all of Murphy's subpoenaed records, information, and complaint to him; (3) identify the complainant and the complainant's address; (4) timely initiate and complete their investigation into the complainant's allegations of possible misconduct; and (5) provide to Murphy "all the extensive critical, complete, accurate, original, certified records and evidence" the defendants subpoenaed. *Id.* at ¶ 34. Due to, *inter alia*, these issues, Murphy asserts that the defendants denied him the opportunity to timely investigate and prepare an answer or otherwise defend against the DB-7 notice, a complaint, and a petition, because of the "delay, loss, destruction, missing and unavailability of all the critical and material information, records, evidence and witnesses including but not limited to the death of Ann Wilson, Andrew Touchstone and/or other deceased or missing critical and material records, evidence and witnesses including [those] yet unknown." *Id.*[15]

- The Disciplinary Enforcement Rules and Disciplinary Board Rules

  imposed [up]on [Murphy] including but not limited to Chapter 87 and 89 including but not limited to Pa. D. B. R. 89.1(b) and 9.2 and 91.3 clearly, expressly and specifically bar and deprive and deny [Murphy] and all other similarly situated of their foregoing clearly protected fundamental constitutional and legal, equitable and civil rights to life, liberty, or property and their rights, privileges and immunities, and delay, deny and deprive [Murphy] and all similarly situated persons a speedy fair and impartial evidentiary validity challenge hearings and

---

[15] While Murphy does not specify how the defendants failed to inform him of the nature of the complaints against him in the second amended complaint, it appears that he provides more information about this in his response to the motion to dismiss. Pl.'s Br. at 9–10.

evidentiary merits hearing and mandatory judicial review including evidentiary hearing by a competent judicial tribunal. *Id.* at ¶ 36.

- The defendants wrongly prohibited Murphy from raising "any federal constitutional claims, issues, challenges whatsoever to the informal and formal disciplinary proceedings against [him]." *Id.* at ¶ 38.

- The disciplinary proceedings are not "subject to any review whatsoever or any adequate, timely, fair, just and speedy fair and impartial trial and judicial review including evidentiary hearing by a competent judicial tribunal[.]" *Id.* at ¶ 39. This deprived Murphy and others similarly situated of "all their foregoing fundamental constitutional equitable and civil rights to life, liberty, or property, and their rights, privileges and immunities and a speedy fair and impartial administrative proceedings and judicial reviewing including evidentiary hearing by a competent judicial tribunal." *Id.*

- The defendants failed to investigate and produce various records, "including all oral and written statements from ODC's witnesses including WCJ Bachman, WCJ Hagan, Mr. Dombrowski, Mr. Howell and Ms. Meehan," and "all notes, memos and reports . . . involving [Murphy's] alleged ethical misconduct." *Id.* at ¶ 42.

The one series of events Murphy describes in some detail appears to involve ODC's failure to provide him with certain witness statements. In this regard, Murphy asserts that, in bad faith, the ODC, Killion, and Gottsch filed a motion for protective orders and to quash Murphy's subpoenas on July 26, 2017. *Id.* at ¶ 43. In doing so, they intentionally misrepresented, *inter alia*, that (1) they had produced to Murphy all witness statements in the ODC's possession, (2) Murphy was not entitled to the other records he was seeking, and (3) the identified records were the only records to which Murphy was entitled. *Id.* at ¶ 43. In addition, at a "validity determination hearing" on September 18, 2017, ODC indicated to the panel chairperson that it had provided additional witness statements to Murphy in August 2017 (although Murphy claims that the ODC produced the statements to him on September 6, 2017). *Id.* at ¶ 44. Apparently, the chairperson quashed Murphy's subpoena duces tecum and entered a protective order, and the Disciplinary Board affirmed this action. *Id.*

On September 22, 2017 and September 26, 2017, the ODC, Killion, and Gottsch filed "post-submission" statements again misrepresenting that the ODC provided all witness statements and exculpatory information to Murphy. *Id.* at ¶¶ 45, 46. Apparently, Gottsch informed the chairperson at the merits hearing on November 7, 2017, that the ODC did not have any additional witness statements to provide to Murphy. *Id.* at ¶ 47.

At some point during a hearing, ODC, Killion, Sodroski, Gilson, and Gottsch presented testimony from "Ms. Meehan" (and presented her sworn statement), and she testified that she "provided oral statements to defendants/ODC approximately six years prior to the 11/7/2017 hearing." *Id.* at ¶ 48. Murphy alleges that the defendants failed to provide him with Ms. Meehan's statement(s), as well as the statements from Thomas Howell, Esquire, "WCJ Bachman," "WCJ Hagan," and "Mr. Dombrowski." *Id.* at ¶¶ 48–50. These witness statements formed the basis for the defendants filing the DB-7 document accusing Murphy of ethical violations in August 2012. *Id.* at ¶ 50.

On April 6, 2018, the hearing panel *sua sponte* recommended a mistrial due to the "suppression of all favorable evidence including ODC witness statements." *Id.* at ¶ 51. The defendants, including Rassias, LeHocky, and Fitzsimons, dismissed the hearing panel and remanded the disciplinary matter for a new hearing before a former Disciplinary Board member, Cohen, on July 27, 2018. *Id.* at ¶ 52. Cohen was to serve as a master to hear testimony and then submit a report and recommendation to the Disciplinary Board.[16] *Id.*

Cohen, Sodroski, Gottsch, and Gilson "continually, intentionally and in bad faith conducted continuing extensive unconstitutional, improper, inequitable, ex-parte [sic] contacts, communications, letters, emails, review and proceedings involving . . . ODC's alleged entire

---

[16] Murphy asserts that Cohen needed to issue findings of fact and conclusions of law, and he needed a quorum to issue a decision. 2d Am. Compl. at ¶ 52.

original, at a minimum, 10 boxes of alleged ODC records" relating to Murphy's alleged ethical violations. *Id.* at ¶ 53. These defendants also created an "alleged privilege log" without Murphy or his counsel being present. *Id.* The defendants created this privilege log despite not having asserted any privileges pertaining to ODC's files at any prior point in the proceedings. *Id.*

For his requests for relief in the second amended complaint, Murphy seeks

> [j]udgment against the defendants' acting in their official and individual capacities under color of state law and each of them including nominal, compensatory and punitive damages including declaratory relief and/or temporary restraining order and/or preliminary and/or permanent injunctive relief to prevent defendants' continuous ongoing deprivation of the foregoing fundamental constitutional rights to life, liberty or property, rights and immunities guaranteed to plaintiff and all others [sic] similarly situated persons pursuant to the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, 42 U.S.C.A. 1983, et. [sic] seq., 28 U.S.C.A. 2201et. [sic] seq. and applicable law and foregoing decisions to prevent continuing imminent irreparable actual injury and damages to plaintiff and all other persons similarly situated directly and proximately caused by defendants' continuing facially and as applied unconstitutional Disciplinary Enforcement Rules and Board Rules, non-judicial, non-prosecutorial, punitive, independent, unappealable, administrative informal and formal purported disciplinary proceedings involving plaintiff and non-judicial administrative formal disciplinary petitions and proceedings involving plaintiff and all others similarly situated persons causing continuing irreparable injury, damages and prejudice to plaintiff and all others similarly situated persons resulting from defendants' facial and/or as applied violation of all their foregoing fundamental constitutional, legal and equitable rights to life, liberty or property, rights, privileges and immunities guaranteed under the United States Constitution 1st, 5th, 6th, 14th Amendments and applicable law and foregoing decisions. Plaintiff further demands judgment against defendants including declaratory and temporary restraining order, preliminary injunctive relief against defendants' including but not limited that defendants' foregoing mandatory Disciplinary Enforcement Rules and Disciplinary Board Rules are clearly, facially and as applied constitute an ongoing violation of plaintiff and all other similarly situated persons' foregoing fundamental constitutional rights to life, liberty or property, privileges and immunities guaranteed under the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, 42 U.S.C.A. 1983, et. [sic] seq., 28 U.S.C.A. 2201et. [sic] seq. directly and proximately causing irreparable injury and damages to plaintiff and all others similarly situated persons and/or enter such other orders that are warranted in the interest of justice.

*Id.* at 38–39.

### C.     Analysis of the Motion to Dismiss

In the motion to dismiss, the defendants contend (1) *Younger* abstention precludes this court from exercising jurisdiction over Murphy's claims about his on-going disciplinary case, (2) the Eleventh Amendment precludes Murphy's claims for non-prospective relief against the individual defendants and all claims against the ODC and the Disciplinary Board, (3) Murphy has failed to state a claim for (a) procedural or substantive due process violations, (b) violations of the First, Fifth, and Sixth Amendments to the United States Constitution, (c) violations of his privileges and immunities or rights to equal protection, (4) the individual defendants have various judicial and quasi-judicial immunities, and (5) the defendants have immunity under 1 Pa. C.S. § 2310 to the extent that Murphy is asserting state law claims against them. *See* Defs.' Mot. to Dismiss the Second Am. Compl. at 1–2, Doc. No. 38.

The court first discusses the applicable standard of review to the defendants claims for dismissal under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and then addresses each of the defendants' arguments in favor of dismissal.

### 1.     Standard of Review

#### a.     Motion to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint or a portion of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). As the moving party, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

In general, a complaint is legally sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The touchstone of

[this] pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Although Rule 8(a)(2) does "not require heightened fact pleading of specifics," it does require the recitation of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation omitted). "In ruling on a 12(b)(6) motion, courts can and should reject legal conclusions, unsupported conclusions, unwarranted references, unwarranted deductions, footless conclusions of law, and sweeping legal conclusions in the form of actual allegations." *Bright v. Westmoreland Cty.*, 380 F.3d 729, 735 (3d Cir. 2004) (citation and internal quotation marks omitted). Ultimately, a complaint must contain facts sufficient to nudge any claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)). Also, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges*, 404 F.3d at 750 (citation omitted).

b.    Motions to Dismiss under Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to move to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). There are two types of Rule 12(b)(1)

motions: facial attacks and factual attacks. "[A] facial attack contests the sufficiency of the pleadings, whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (internal citations and quotation marks omitted) (all but first alteration in original). For a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (internal citations omitted). Here, the motion to dismiss constitutes a facial attack, because the motion only requires the court to consider the facts set forth in the second amended complaint and any attached exhibits. In considering that attack, the court "appl[ies] the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." *Aichele*, 757 F.3d at 358; *see also Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) ("The facial attack does offer similar safeguards to the plaintiff [as Federal Rule of Civil Procedure 12(b)(6)]: the court must consider the allegations of the complaint as true."). The party asserting that the court has jurisdiction has the burden of demonstrating that jurisdiction exists. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 182 (1936) ("It is incumbent upon the plaintiff properly to allege the jurisdictional facts, according to the nature of the case." (citations and quotation marks omitted)); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 ("It is to be presumed that a cause lies outside th[e federal courts'] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" (citations omitted)).

## 2.    *Younger* Abstention

The defendants' first argument is that *Younger* abstention prevents this court from exercising jurisdiction over Murphy's claims because he is essentially asking the court to interfere with his on-going disciplinary case. Defs.' 2d Br. at 9–15. While unclear, it appears that Murphy asserts that the court should not abstain under *Younger* because the defendants have not shown that all requirements set forth in *Middlesex County Ethics Commission v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) are met here. Pl.'s Br. at 38, 40–43.[17] In particular, Murphy seemingly contends that the defendants have harassed him and otherwise acted in bad faith. *Id.* at 40. He also appears to claim that exceptional circumstances are not present here. *Id.* at 38. He further argues that *Younger* abstention is inappropriate because the state disciplinary proceedings are limited to determining whether he (and others similarly situated) violated Pennsylvania's ethical rules for attorneys and Murphy is unable to raise any constitutional claims there. *Id.* at 41.

In *Younger*, the Supreme Court announced the principle that federal courts are required to abstain from enjoining parallel pending state criminal proceedings "when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." 401 U.S. at 43–44. The doctrine is narrow; if a federal court has jurisdiction over a case, its "'obligation' to hear and decide a case is 'virtually unflagging.'" *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 76 (2013) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Accordingly, the Supreme Court has extended *Younger* to only two other types of "exceptional" circumstances: civil enforcement proceedings, and "civil proceedings involving

---

[17] The court must again note that Murphy's brief in opposition to the motion to dismiss, instead of addressing the defendants' arguments in separate sections, mixes his arguments about *Younger* abstention, subject-matter jurisdiction, and the merits of his claims, often to the point where it is impossible for this court to ascertain to which of the defendants' arguments Murphy is responding at a given time.

certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 73 (internal quotation marks and citation omitted).[18]

For a federal court to abstain under *Younger*,

(1) there [must be] ongoing state proceedings that are judicial in nature; (2) the state proceedings [must] implicate important state interests; and (3) the state proceedings [must] afford an adequate opportunity to raise federal claims. Even if the necessary three predicates exist, however, *Younger* abstention is not appropriate if the federal plaintiff can establish that (1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist ... such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted.

*Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989) (citing *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

All three requirements for *Younger* abstention are satisfied in this case, as (1) there are ongoing state proceedings which are judicial in nature that were purportedly going to proceed to an ultimate decision and then possibly an appeal to the Pennsylvania Supreme Court;[19] (2) the proceedings implicate important state interests, including the Disciplinary Board's authority to discipline members of the Bar of the Commonwealth of Pennsylvania; and (3) although Murphy

---

[18] The Supreme Court has concluded that state attorney disciplinary proceedings are "exactly the type of proceedings envisioned by *Younger* since they affect 'vital state interests' and 'bear a close relationship to proceedings criminal in nature.'" *Koresko v. Office of Disciplinary Counsel of the Disciplinary Bd. of the Sup. Ct. of Pa. ex rel. Killion*, No. CIV. A. 14-1154, 2015 WL 1312269, at *3 (E.D. Pa. Mar. 24, 2015) (quoting *Middlesex Cty. Ethics Comm.*, 457 U.S. at 432 and citing *Sprint Comm'ns, Inc.*, 134 S.Ct. at 587).

[19] In his opposition brief, Murphy points out that the ODC and the Disciplinary Board are not courts. *See* Pl.'s Br. at 59 (citing *First Amendment Coalition v. Judicial Inquiry and Review Bd.*, 460 A.2d 722 (Pa. 1983)). While the Pennsylvania Supreme Court explained in *First Amendment Coalition* that the Judicial Inquiry and Review Board was an agency and not a court, 460 A.2d at 724 ("Clearly, the Board, defined by section 725 of the Judicial Code as an 'agency,' is not a court."), this does not mean that the disciplinary proceedings are not judicial in nature. *See, e.g.*, *Haagensen v. Supreme Court of Pa.*, 651 F. Supp. 2d 422, 433 (W.D. Pa. 2009) ("The [Supreme] Court has also recognized that '[a] disciplinary proceeding is judicial in nature[.]" (quoting *Middlesex Cty. Ethics Comm.*, 457 U.S. at 433)). In addition, considering the Disciplinary Board's decision is appealable to the Supreme Court "for judicial review[,] an undeniably judicial forum," this court would still treat the disciplinary proceedings as a unitary process that is judicial in nature. *See L.P. Grp. 2, Inc. v. City of Philadelphia*, Civ. A. No. 13-7484, 2015 WL 3822203, at *6 (E.D. Pa. June 19, 2015) ("Consistent with Third Circuit and Supreme Court precedent, the fact that the Board [of Labor Standard]'s decision was appealable, and indeed was appealed, to the Court of Common Pleas for judicial review—an undeniably judicial forum—the court will consider these to be a unitary process that is judicial in nature." (citations omitted)).

attempts to question the fairness of the proceedings and asserts that they are being asserted in bad faith and with the purpose to harass him, there are only conclusory allegations suggesting that Murphy will not be given the opportunity to raise his constitutional claims during the disciplinary proceedings, including on a possible appeal to Pennsylvania Supreme Court.[20] *See Middlesex Cty. Ethic Comm.*, 457 U.S. at 432–36; *Koresko*, 2015 WL 1312269, at \*3–5; *see also Feingold v. Office of Disciplinary Counsel*, Civ. A. No. 09-4421, 2009 WL 4857380, at \*4–5 (E.D. Pa. Dec. 14, 2009) (determining that *Younger* abstention barred plaintiff from proceeding with claims in federal court where (1) there was an ongoing state proceeding relating to plaintiff's petition for writ of mandamus to require prothonotary to accept his court filings despite him being disbarred, (2) "this proceeding implicate[d] important state interests because it involve[d] a challenge to a

---

[20] Regarding Murphy's ability to raise constitutional claims, Murphy references no case law, statute, rule or allegation of fact indicating that he cannot raise constitutional claims as part of the disciplinary proceedings. "In determining whether a federal plaintiff has an adequate opportunity to raise his constitutional claims during state-court judicial review of the administrative decision, we ask whether 'state law *clearly bars* the interposition of the constitutional claims.'" *Gonzalez v. Waterfront Comm'n of N.Y. Harbor*, 755 F.3d 176, 184 (3d Cir. 2014) (quoting *Moore v. Sims*, 442 U.S. 415, 425–26 (1979)). "The 'burden on this point rests on the federal plaintiff to show that state procedural law barred presentation of its claims.'" *Lazaridis v. Wehmer*, 591 F.3d 666, 670–71 (3d Cir. 2010) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14–15 (1987)).

Here, Pennsylvania's disciplinary process "regularly involves constitutional objections, which the state Supreme Court in turn adjudicates." *Koresko*, 2015 WL 1312269, at \*5. Pennsylvania case law also reveals numerous cases involving attorney discipline where the Pennsylvania Supreme Court addresses constitutional issues. *See, e.g.*, *Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 54 (Pa. 2005) (addressing attorney's argument concerning violation of constitutional right to confront witnesses); *Office of Disciplinary Counsel v. Marcone*, 855 A.2d 654, 663–68 (Pa. 2004) (addressing attorney's arguments implicating Supremacy Clause, Commerce Clause, and First Amendment); *Office of Disciplinary Counsel v. Surrick*, 749 A.2d 441, 444 (Pa. 2000) (addressing attorney's due process claim involving retroactive application of standard to his case); *Office of Disciplinary Counsel v. Zdrok*, 645 A.2d 830, 834–35 (Pa. 1994) (addressing attorney's arguments that, *inter alia*, (1) punishment violated constitutional prohibition against ex post facto laws, and (2) ODC "violated his due process rights by introducing evidence of unrelated misconduct and aggravating factors which occurred after the criminal conduct at issue, when such misconduct was not alleged in the Petition for Discipline"); *In re Oxman*, 437 A.2d 1169, 1172–74 (Pa. 1981) (addressing attorneys' speedy trial, double jeopardy, and equal protection claims). All Murphy does in his second amended complaint is make conclusory statements that certain aspects of his disciplinary proceedings (such as those relating to subpoenas) are not subject to judicial review. These conclusory statements are not entitled to an assumption of truth, *see Iqbal*, 556 U.S. at 679 ("[B]ecause [the allegations] are no more than conclusions, [they] are not entitled to the assumption of truth."), and they are belied by the extensive case law showing that the Disciplinary Board decisions are ultimately appealable to and reviewable by (de novo) the Pennsylvania Supreme Court, with the Court being able to address any claim properly preserved and raised by the attorney. Moreover, Murphy has not plausibly alleged or shown that Pennsylvania's disciplinary rules clearly prevent him from raising his federal constitutional claims in his disciplinary proceedings.

state's chosen means to regulate the professional conduct of an attorney," (3) "the state has a strong interest in a challenge to the process by which it has chosen to compel compliance with its decision to enjoy a disbarred attorney from the continued practice of law[, and it] has a similarly strong and important interest in regulating the conduct of such an attorney," and (4) "the state appellate process presents an adequate opportunity for the plaintiff to raise his constitutional claim"), *aff'd*, 415 F. App'x 429 (3d Cir. 2011).

Even with the court determining that the requirements for *Younger* abstention are met in this case, the court should not abstain if Murphy can plausibly establish that "(1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist . . . ." *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989). Regarding the former exception, "[t]his exception to *Younger* is only appropriate . . . if the plaintiff can demonstrate bad-faith or harassment by specific evidence." *Koresko*, 2015 WL 1312269, at *4 (citations omitted). As for the latter exception, "such circumstances must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation." *Schall*, 885 F.2d at 125. The state court or agency must be "incapable of fairly and fully adjudicating the federal issues before it" for this exception to apply. *Id.* at 124.

Murphy has failed to include any plausible, non-conclusory allegation that demonstrates bad faith or harassment by the defendants. The court notes again here that Murphy has failed to include numerous allegations relating to what has occurred (as evidenced by other filings in this matter) during the state disciplinary proceedings.[21] Nonetheless, none of his claims of bad faith or

---

[21] For example, Murphy makes repeated references to the fact that his disciplinary proceedings have lasted for seven years. Despite the evidence previously presented to the court that he initially requested a deferment of the proceedings, and even objected to the ODC's motion to rescind the deferment, he does not allege any facts relating to this activity and then complains of the delay and makes conclusory allegations of bad faith and harassment.

harassment, seemingly all of which are conclusory in nature, merely indicate his disagreement with how certain aspects of the disciplinary proceedings have transpired. Even his seemingly main allegation of error, involving ODC's failure to turn over certain evidence (despite their repeated assurances that all such evidence was disclosed), including a recorded statement which ultimately resulted in a mistrial (and the appointment of Cohen as a master to preside over the proceedings), contains only conclusory allegations of bad faith and harassment. "A prosecution or proceeding is conducted in 'bad faith' for abstention purposes when it is brought 'without hope' of success." *Getson v. New Jersey*, 352 F. App'x 749, 753 (3d Cir. 2009) (citations omitted); *see Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975) (explaining that "'bad faith' in this context generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." (citation omitted)). Simply because the ODC (through certain individual defendants) misrepresented the disclosure of all exculpatory evidence when a document had not been disclosed does not mean that they are prosecuting the disciplinary charges in bad faith. At bottom here, there are no plausible allegations that these proceedings are moving forward without hope of success, and even with the defendants incorrectly representing their disclosure of all evidence that Murphy was entitled to, his allegations related to any purported bad faith or harassment are only conclusory and will not carry the day.

As for the exceptional circumstances' exception, Murphy has not alleged sufficient plausible facts demonstrating a highly unusual factual situation. Moreover, there is no indication that the ODC, Disciplinary Board, or the Pennsylvania Supreme Court are "incapable of fairly and fully adjudicating the federal issues before it" for this exception to apply. *Schall*, 885 F.2d at 124. Accordingly, pursuant to *Younger*, this court will abstain from presiding over Murphy's claims for

injunctive and declaratory relief.[22] *See Howard v. N.J. Div. of Youth and Family Servs.*, 398 F. App'x 807, 811 (3d Cir. 2010) ("*Younger* operates to bar suits for injunctive and declaratory relief." (citation omitted)).

Unfortunately, the court's resolution of *Younger* abstention does not end conclude this matter, as "a district court, when abstaining from adjudicating a claim for injunctive relief, should stay and not dismiss accompanying claims for damages and attorney fees when such relief is not available from the ongoing state proceedings." *Williams v. Hepting*, 844 F.2d 138, 144–45 (3d Cir. 1988) (internal quotation marks and citation omitted). Therefore, the court must address the defendants' other arguments in support of the motion to dismiss to determine whether any claims survive dismissal and should be stayed.

### 3.      Eleventh Amendment Immunity

The defendants argue that the Eleventh Amendment bars Murphy's claims against the ODC and the Disciplinary Board and his official capacity claims against the individual defendants. Defs.' 2d Br. at 15–17. Murphy contests that the Eleventh Amendment applies because the defendants are not "arm[s] of the state," and argues that it does not bar any of his claims (particularly those for prospective injunctive relief). Pl.'s Br. at 62–64.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This Amendment

> has been interpreted to render states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally

---

[22] "[T]he traditional power of the state courts to establish standards for members of their bars and to discipline them . . . suggests that incursions by federal courts into ongoing disciplinary proceedings would be peculiarly disruptive to notions of comity." *Gipson v. N.J. Supreme Ct.*, 558 F.2d 701, 704 (3d Cir. 1977).

immune from suit by private parties in federal court. Indeed, it has been recognized for over two hundred years that a state's immunity from suit in federal court is a fundamental principle of our constitutional structure that preserves, as intended by the Framers, the respect and dignity of the states and protects the ability of the states "to govern in accordance with the will of their citizens."

*Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (quoting *Alden v. Maine*, 527 U.S. 706, 751 (1999)). The Eleventh Amendment serves as "a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996).

Contrary to Murphy's unsubstantiated arguments that the Eleventh Amendment does not even apply to the named defendants, the Eleventh Amendment bars his non-injunctive claims for relief against the individual defendants (as all allegations against them pertain to their work in their roles for the ODC or the Disciplinary Board) in their official capacities and the claims against the ODC and the Disciplinary Board.[23] *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (concluding that Eleventh Amendment immunity bars suit for monetary damages against state official acting in official's official capacity); *Callahan v. City of Philadelphia*, 207 F.3d 668, 672 (3d Cir. 2000) (concluding that "[a]ll courts and agencies of the unified judicial system . . . are part

---

[23] The court recognizes that "Eleventh Amendment immunity is, however, subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Hess*, 297 F.3d at 323 (citation omitted).

As for the first exception to Eleventh Amendment immunity, Congress did not intend to abrogate Eleventh Amendment immunity by enacting 42 U.S.C. § 1983. *See Quern v. Jordan*, 440 U.S. 332, 344–45 (1979) (stating that "§ 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States"). Concerning the second exception, the Commonwealth of Pennsylvania has enacted 42 Pa. C.S. § 8521(b), which expressly indicates that the Commonwealth has not waived its Eleventh Amendment immunity from suit in federal courts. *See* 42 Pa. C.S. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); *see also Lavia v. Pa., Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that Pennsylvania has not waived Eleventh Amendment immunity). For the final exception, the defendants concede that the Eleventh Amendment would not bar Murphy's claims for prospective injunctive relief against the individual defendants (this would not apply to his claims against the ODC and the Disciplinary Board). *See* Defs.' 2d Br. at 17 ("The only possible relief that could get around the Eleventh Amendment here is prospective, injunctive relief under *Ex Parte Young*[, 209 U.S. 123 (1908)] to stop a continuing violation of federal law. This exception does not apply to the ODC or [Disciplinary] Board as entities, though." (citations omitted)).

of 'Commonwealth government' and thus are state rather than local agencies"); *Ostrowski v. Killion*, No. CIV. A. 14-1727, 2015 WL 5286622, at *3 (M.D. Pa. Sept. 10, 2015) (dismissing official capacity claims against, *inter alia*, Killian/Killion, as Chief Counsel for the Disciplinary Board based on Eleventh Amendment); *Democracy Rising PA v. Celluci*, 603 F. Supp. 2d 780, 795 (M.D. Pa. 2009) ("[T]he Disciplinary Board of the Supreme Court of Pennsylvania—of which the Office of Disciplinary Counsel is a part—is encompassed within the unified judicial system. Both agencies, as well as officials thereof, are thus immune from suit under the Eleventh Amendment[.]"); *Law Offices of Christopher S. Lucas and Assocs. v. Disciplinary Bd. of the Supreme Ct. of Pa.*, 320 F. Supp. 2d 291, 295 (M.D. Pa. 2004) ("[W]e hold that the Eleventh Amendment is a bar to Plaintiff's suit against the Disciplinary Board."); *Mattas v. Supreme Court of Pa.*, 576 F. Supp. 1178, 1182 (W.D. Pa. 1983) ("[T]he Office of the Disciplinary Counsel, as an entity, [is an] arm of the state and therefore cannot be sued.").[24] Accordingly, the court lacks jurisdiction over Murphy's claims against the ODC and the Disciplinary Board as well as his claims against the individual defendants in their official capacities, to the extent he is seeking anything other than prospective injunctive relief.

### 4. The Individual Defendants' Possible Prosecutorial, Quasi-Judicial and Judicial Immunities

At this point in the court's analysis, Murphy's only remaining claims are those claims for monetary relief against the individual defendants in their individual capacities. Regarding these

---

[24] In addition, neither the ODC nor the Disciplinary Board is a "person" amenable to suit under section 1983. *See Law Offices of Christopher S. Lucas and Assocs.*, 320 F. Supp. 2d at 296 ("[W]e hold that the Disciplinary Board is not a 'person' who can be sued within the meaning of § 1983."); *Mattas*, 576 F. Supp. at 1182 (concluding that neither ODC nor Disciplinary Board are "'persons' within the meaning of 42 U.S.C. § 1983, and therefore, cannot be sued under the Civil Rights Act"); *see also Funk v. Disciplinary Bd. of Com. of Pa.*, Civ. A. No. 87-6833, 1990 WL 82120, at *4, n.13 (E.D. Pa. June 12, 1990) ("A court in this district has previously held that the Disciplinary Board is not a 'person' for the purposes of § 1983[.]"). Moreover, the individual defendants sued in their official capacities are not "persons" amenable to suit under section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").

claims, the defendants move to have the court dismiss Murphy's federal constitutional claims against them based upon absolute prosecutorial immunity, quasi-judicial immunity, and judicial immunity. Defs.' 2d Br. at 22–25. They also assert that Murphy has otherwise failed to state a plausible claim for any constitutional violation. *Id.* at 17–21. The court will first address whether the defendants are entitled to quasi-judicial immunity.

Judges are immune from liability for all actions taken within their judicial capacities. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages."); *Martinez v. Eagle Disposal*, -- F. App'x --, 2019 WL 3731429, at *3 (3d Cir. Aug. 8, 2019) ("[A] judge has absolute immunity for actions performed in a judicial capacity." (citations omitted)). The Third Circuit has described quasi-judicial immunity as follows:

> Quasi-judicial immunity, as one might guess, evolved out of its well-known namesake, judicial immunity. "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction[.]" *Pierson v. Ray*, 386 U.S. 547, 553–54, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). That immunity secures a "general principle of the highest importance to the proper administration of justice": ensuring that a "judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself," *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1871), and "without harassment or intimidation" in those "controversies sufficiently intense to erupt in litigation," *Butz v Economou*, 438 U.S. 478, 512, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Judicial immunity is thus essential to judges' ability to exercise "independent and impartial ... judgment." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993).

> The fair administration of justice depends not only on judges, however, and these same concerns apply to "certain others who perform functions closely associated with the judicial process." *Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). For that reason, so-called "quasi-judicial" immunity has been extended over time to protect a range of judicial actors, including (1) those who make discretionary judgments "functional[ly] comparab[le]" to judges, such as prosecutors and grand jurors, *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); (2) those who "perform a somewhat different function in the trial process but whose participation

... is equally indispensable," such as witnesses, *Briscoe v. LaHue*, 460 U.S. 325, 345–46, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); and (3) those who serve as "'arms of the court,' ... fulfill[ing] a quasi-judicial role at the court's request," such as guardians ad litem or court-appointed doctors, *Hughes v. Long*, 242 F.3d 121, 126 (3d Cir. 2001). In this case, we focus on the last category.

        In determining whether a government actor was fulfill[ing] a quasi-judicial role at the court's request, we take a "'functional' approach to immunity," *Forrester v. White*, 484 U.S. 219, 224, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). That is, "we examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Id.* Merely being "part of the judicial function," even an "extremely important" part, will not automatically entitle one to quasi-judicial immunity. *Antoine*, 508 U.S. at 435–36, 113 S.Ct. 2167 (refusing to extend such immunity to court reporters). Even a judge will not enjoy immunity for "nonjudicial actions, *i.e.*, actions not taken in [her] judicial capacity," or for judicial actions "taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam). Absolute immunity, we have been told time and again, is "strong medicine," *Forrester*, 484 U.S. at 230, 108 S.Ct. 538 (citation omitted), and the "presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise *248 of their duties," *Burns v. Reed*, 500 U.S. 478, 486–87, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). Accordingly, an "official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Id.* at 486, 111 S.Ct. 1934.

*Russell v. Richardson*, 905 F.3d 239, 247–48 (3d Cir. 2018).

Numerous federal courts in this Commonwealth have concluded that Disciplinary Board members and ODC members are protected by quasi-judicial immunity. *See Ostrowski*, 2015 WL 5286622, at *4 (explaining that "[t]he Third Circuit has held that disciplinary counsel and hearing committee members perform 'discretionary acts' when they prosecute, consider, or rule on disciplinary actions and, therefore, are immune from civil suit under the quasi-judicial immunity doctrine" and concluding that *pro se* plaintiff attorney's conclusory allegations that ODC officials acted outside their quasi-judicial and prosecutorial capacity were insufficient to overcome absolute immunity); *Nguyen Vu v. City of Philadelphia*, Civ. A. No. 10-953, 2012 WL 1222628, at *8 (E.D. Pa. Apr. 11, 2012) (concluding that disciplinary counsel were entitled to quasi-judicial immunity

from claims against them relating to "quasi-judicial functions they performed as prosecuting attorneys for the Disciplinary Board of the Pennsylvania Supreme Court"); *Haagensen*, 651 F. Supp. 2d at 433 (explaining that "quasi-judicial immunity bar[s] claims against state bar disciplinary members" and concluding that "the Disciplinary Board Members . . . who issued a report and sat as a hearing committee for the Board, are entitled to quasi-judicial immunity and Plaintiff's suit against them cannot proceed"); *Frankel v. Disciplinary Bd. of Supreme Ct. of Pa.*, No. Civ. A. 05-CV-1450, 2005 WL 2994354, at *2 (E.D. Pa. Nov. 8, 2005) ("[Q]uasi-judicial immunity bars Plaintiff's claims for damages against the members of the Disciplinary Board."); *see also Capogrosso v. The Supreme Ct. of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009) (concluding that "[t]o the extent that [the *pro se* attorney plaintiff's] complaint can be read to include claims against [the Director of the New Jersey Advisory Committee on Judicial Conduct] and [Disciplinary Counsel for the New Jersey Advisory Committee on Judicial Conduct] in their individual capacities, they are entitled to quasi-judicial immunity and thus not subject to suit for injunctive relief"); *Kwasnik v. LeBlon*, 228 F. App'x 238, 244 (3d Cir. 2007) (concluding that New Jersey Advisory Committee members, in considering complaints against judge, "enjoy quasi-judicial immunity from suit" and "[t]o the extent their actions are prosecutorial in nature, the Committee members are protected by prosecutorial immunity").

Here, to the extent that the court can ascertain the crux of Murphy's allegations, his complaints relate to his contention that the ODC unfairly charged him with disciplinary violations and he has numerous issues with the prosecution of those violations. Not finding quasi-judicial immunity in this type of case would open disciplinary counsel and board members to suit every time that an attorney asserts that he was wrongfully charged. Any arguments from Murphy that the prosecution against him exceeds the ODC's or the Disciplinary Board's jurisdiction or that the

acts against him are not judicial acts are implausible. In addition, despite Murphy asserting individual liability claims against the individual defendants here, his alleged issues relate to the defendants' conduct during the course of their official duties for the ODC and the Disciplinary Board. Accordingly, the court will dismiss Murphy's claims for damages against the individual defendants in their individual capacities because quasi-judicial immunity bars those claims.[25]

The court will also address the defendants' arguments that absolute prosecutorial immunity protects the individual ODC defendants (*i.e.* Killion, Gottsch, Hernandez, Sodroski, and Gilson). This doctrine generally protects state prosecutors "from liability under § 1983 for actions performed in a quasi-judicial role." *Yarris v. County of Delaware*, 465 F.3d 129, 135 (3d Cir. 2006) (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)). Under this doctrine, a prosecutor acting within the scope of his duties in initiating and pursuing a criminal prosecution is absolutely immune from civil suit for damages under section 1983 for alleged deprivations of the accused's constitutional rights. *See Imbler*, 424 U.S. at 427 ("We conclude that the considerations outlined above dictate the same absolute immunity under § 1983 that the prosecutor enjoys at common law."). This "immunity attaches to actions 'intimately associated with the judicial phases of litigation,' but not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." *Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008) (citations omitted). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991) (citations omitted).

Additionally, "a person is not immune from suit for every wrong he commits just because he happens to be employed as a prosecutor: the inquiry focuses on the nature of the function

---

[25] Because of the court's resolution of this issue, the court will not address the defendants' contention that judicial immunity applies to Murphy's individual liability claims against Cohen, Rassias, Fitzsimons, Cali, LeHocky, and Penny.

performed, not the identity of the actor who performed it." *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011) (internal quotation marks and citation omitted). Courts take a two-step approach to determining whether a prosecutor's acts are protected by absolute immunity. *Id.* First, "[t]he court must ascertain just what conduct forms the basis for the plaintiff's cause of action[.]" *Id.* (citation omitted). "Th[is] first stage focuses on the unique facts of each case and requires careful dissection of the prosecutor's actions." *Id.* (citation omitted). Second, the court must "determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Id.* (citation omitted).

Here, the defendants contend that the individual ODC defendants—Killion, Gottsch, Hernandez, Sodroski, and Gilson—are entitled to absolute prosecutorial immunity for their conduct in investigating and prosecuting the disciplinary violations asserted against Murphy. Defs.' 2d Br. at 22–23. They assert that Murphy's allegations against them relate to their prosecutorial functions, and "[t]his Circuit's case law holds that disciplinary officials and counsel have prosecutorial immunity for how they perform their duties." *Id.* at 22 (citations omitted). They further argue that their prosecutorial immunity extends to Murphy's claims that they withheld exculpatory evidence and to any investigations as well. *Id.* at 22–23.

In response to these arguments, Murphy asserts that the disciplinary proceedings are administrative and not judicial in nature. Pl.'s Br. at 7. He claims that the allegations here are similar to other instances where courts have determined that defendants were not entitled to absolute prosecutorial immunity, such as *Forrester v. White*, 484 U.S. 219 (1988) (concluding state court judge was not absolutely immune from equal-protection-violation claim by former probation officer that judge demoted and discharged because of her sex; judge was acting in administrative capacity when demotion and dismissal occurred). *Id.* at 70–71. Murphy also

contends that absolute immunity cannot bar his claims for prospective injunctive relief. *Id.* at 71 (citing *Pulliam v. Allen*, 466 U.S. 522 (1970)). He further argues that the ODC defendants "never acted in any prosecutorial or judicial capacity whatsoever but at most were involved in an administrative capacity which is not intimately connected with a prosecutorial or judicial function." *Id.*

As a preliminary note, Murphy appears to rely on the incorrect definition of "administrative," when arguing against the applicability of absolute prosecutorial immunity. The term "administrative" does not reference an allegedly administrative process by an agency or officers of an agency (as he argues that the disciplinary proceedings are "administrative" and not judicial in nature), but instead pertains to something "relating to, or involving the work of managing a company or organization." *Administrative*, Black's Law Dictionary (11th ed. 2019). Thus, the Supreme Court has excluded from the protection of absolute judicial immunity acts by a judge in demoting or dismissing a probation officers as those acts "involve[] . . . supervising court employees and overseeing the efficient operation of a court." *Forrester*, 484 U.S. at 229. In addition, "judicial immunity has not been extended to judges acting to promulgate a code of conduct for attorneys." *Id.* at 228 (citing *Supreme Ct. of Va. v. Consumers Union of United States, Inc.*, 446 U.S. 719 (1980)).

Murphy does not articulate how the allegedly wrongful acts here are administrative in nature and not related to the investigation and prosecution of the allegations of ethical misconduct against him. All allegations relate to events that occurred after the Disciplinary Board (or the ODC) received complaints of misconduct against him. None of his claims involve the types of administrative acts that courts have concluded fall outside the scope of absolute prosecutorial

immunity. As such, the court rejects Murphy's assertion that the ODC defendants are not entitled to absolute prosecutorial immunity because they were acting in an administrative capacity.

The acts Murphy complains of relative to the individual ODC defendants involve their investigation and prosecution of the disciplinary complaints against him. Unfortunately, despite seemingly having the ability to specifically identify each ODC defendant and the role that defendant played in the investigation and prosecution of the disciplinary charges, Murphy often groups all of the defendants together (and even does so with the individual Disciplinary Board defendants, who do not appear to have played any role in the investigation or actual prosecution of the disciplinary charges). Murphy has done this despite having two prior attempts to plead a proper complaint under Rule 8(a), *Twombly*, and *Iqbal*. Thus, as already explained, identifying all of Murphy's claims against the proper defendants is impossible from reading the second amended complaint.

Despite these pleading issues, the court can still address the ODC defendants' claim for absolute prosecutorial immunity. Some courts have concluded that "[h]earing officers and counsel are deemed to be performing functions analogous to those of a prosecutor when they consider and prosecute disciplinary complaints and, therefore, are entitled to prosecutorial immunity." *Ostrowski*, 2015 WL 5286622, at *4 (citing *Kwasnik*, 228 F. App'x at 243–44); *see also Haagensen*, 651 F. Supp. 2d at 434 ("Plaintiff's allegations against [ODC Chief Counsel] Killion, [ODC] Deputy Chief Burgoyne, and [ODC] Counsel Napoli arise out of their actions as prosecutors for the state before the Disciplinary Board; thus they are no different from those alleged in *Imbler*. . . . Therefore, Defendants Killion, Burgoyne and Napoli are entitled to absolute prosecutorial immunity from actions they took in the disciplinary proceedings[.]"); *Frankel*, 2005 WL 2994354, at *3 (concluding that absolute prosecutorial immunity barred claims against two

ODC members who prosecuted disciplinary action against plaintiff, where plaintiff alleged that they "knowingly and intentionally misstated and misrepresented evidence, referenced information that was not in evidence, and took actions that were designed to malign and otherwise cause harm to Plaintiff"). None of those cases, however, seemingly dealt with circumstances like those presented here where the plaintiff is seemingly complaining about the entire process of the disciplinary proceeding, including complaining that he was never served with original process (the court cannot tell whether Murphy is referring to the DB-7 or when formal proceedings started against him) and the delay in the investigation. In addition, there are undeniably aspects of the ODC's responsibilities that are investigative in nature. *See, e.g.*, Pa. Disciplinary Bd. R. 87.6 ("Subject to the policy supervision and control of the Chief Disciplinary Counsel, the investigative staff of the district office shall make such investigation of the complaint and report thereon as may be appropriate.").

This court has not located any decision explaining where, in the context of a disciplinary proceeding, the investigative / prosecutorial divide occurs. In the criminal context, "[a] rule of thumb for defining the investigative / prosecutorial divide is the filing of a complaint." *Spiess v. Pocono Mountain Reg'l Police Dep't*, No. 3:10cv287, 2013 WL 1249007, at *15 (W.D. Pa. Mar. 26, 2013) (citing *Kulwicki v. Dawson*, 969 F.2d 1454 (3d Cir. 1992)). "[T]he mere fact that a prosecution is formally initiated does not mean that all investigatory acts preceding the filing of charges are entitled to immunity." *Id.* (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 276 (1993)). In this regard,

> [t]here is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police

officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.

*Buckley*, 509 U.S. at 273 (citation and internal quotation marks omitted).

Here, most of Murphy's allegations against the individual ODC defendants, particularly those relating to the proceedings after the initiation of formal disciplinary proceedings in December 2016, are prosecutorial in nature as they relate to various aspects of the proceedings and the ODC defendants' conduct related to and during those proceedings. As noted by the defendants, Murphy's claims about the withholding of exculpatory evidence are also barred by absolute prosecutorial immunity as the second amended complaint indicates that this occurred after December 2016 and while they were prosecuting the disciplinary charges. *See Yarris*, 465 F.3d at 137 ("It is well settled that prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, so long as they did so while functioning in their prosecutorial capacity.").

The court is nonetheless concerned that the actions taken by the individual ODC defendants prior to the initiation of formal disciplinary proceedings against Murphy in December 2016, are potentially purely investigative in nature. The ODC defendants appear to have received complaints about alleged ethical misconduct, sent a DB-7 statement to Murphy purportedly explaining the facts and alleged misconduct, and then requested and received from Murphy a response (and a supplemental response) to the DB-7 statement. These acts appear to be investigative in nature because they were taken to gain information that could lead them to pursue discipline against Murphy. This is similar to detectives obtaining information to possibly give the detectives probable cause to recommend that a suspect be arrested. The Third Circuit has explained "that a limited factual inquiry may in some cases be necessary to determine in what role the challenged function was exercised." *Forsyth v. Kleindienst*, 599 F.2d 1203, 1215 (3d Cir. 1979). In this case, the

allegations in the second amended complaint do not provide enough information about the context about Murphy's complaints about the ODC's investigative process. Therefore, the court cannot conclude that absolute prosecutorial immunity prevents all of Murphy's claims asserted in the second amended complaint to the extent any claims related to the earlier portion of the ODC's investigation into the complaints of potential misconduct.

5.      **Whether Murphy Has Stated a Plausible Claim for Relief for Any Constitutional Violation**

a.      Procedural Due Process

Pursuant to the Fourteenth Amendment, "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Due process protections extend to both substantive and procedural violations of the Fourteenth Amendment. *See Planned Parenthood of S.E. Pa. v. Casey*, 505 U.S. 833, 846–87 (1992) ("[I]t is settled that the due process clause of the Fourteenth Amendment applies to matters of substantive law as well as to matters of procedure." (citation and internal quotation marks omitted)). "[T]he substantive component of the Clause . . . protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Whereas the procedural component "provide[s] a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a State." *Id.*

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Generally, "the Constitution requires some kind of a hearing *before* the State deprives

a person of liberty or property." *Id.* (citations omitted). "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

Murphy's "license to practice law constitutes a property interest that deserves procedural due process protection" *Casella v. Pa. Interest on Lawyers Trust Account Bd.*, 47 F. App'x 193, 195 (3d Cir. 2002). Nonetheless, Murphy's procedural due process claim here fails because he has failed to allege that he has been deprived of this interest insofar as he has not alleged that he has lost his license to practice law or that his license has been otherwise impaired. *Id.* at 195–96. In addition, "to state a claim for failure to provide [procedural] due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin*, 227 F.3d at 116.[26] As already explained, Murphy has not taken advantage of all of the processes available to him as he is awaiting Master Cohen's decision and, should that decision be adverse to him, he has the ability to challenge it before the Pennsylvania Supreme Court. In addition, to the extent that any of Murphy's allegations relate to any potential inadequacy of those processes (such as an appeal to the Pennsylvania Supreme Court), he has not pleaded any plausible facts in support of his contention and there is nothing in the record to indicate that those processes are patently inadequate.[27]

---

[26] The court notes that "when a state affords a full judicial mechanism with which to challenge the administrative decision in question, the state provides adequate procedural due process." *Pioneer Aggregates, Inc. v. Pa. Dep't of Env't Protection*, 540 F. App'x 118, 126 (3d Cir. 2013) (internal quotation marks omitted) (quoting *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 597 (3d Cir. 1995)).

[27] Murphy has not identified, and this court has not located any case concluding that the processes available to attorneys involved in disciplinary proceedings in the Commonwealth of Pennsylvania are patently inadequate.

b. Substantive Due Process

"To state a substantive due process claim, the plaintiff must allege that he was deprived of a fundamental right, and that the government conduct at issue was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Collura v. Disciplinary Bd. of Supreme Ct. of Pa.*, Civ. A. No. 11-5637, 2013 WL 4479141, at *7 (E.D. Pa. Aug. 22, 2013) (citations and internal quotation marks omitted), *aff'd*, 569 F. App'x 114 (3d Cir. 2014). As with Murphy's procedural due process claim, he has not stated a plausible substantive due process claim insofar as he has not yet been deprived of a fundamental right. In addition, despite Murphy's allegations that, *inter alia*, he never received notice of the complaints against him (which is belied by his own statements in his brief in opposition to the motion to dismiss) and certain exculpatory evidence was wrongfully withheld despite repeated representations that all such evidence was provided to him, none of these allegations "shock the contemporary conscience." *Id.* Accordingly, Murphy has failed to allege a plausible substantive due process claim.

c. Fifth Amendment Claim

It is unclear which type of claim Murphy is seeking to raise under the Fifth Amendment in the second amended complaint.[28] To the extent that Murphy is attempting to assert a due process claim, he may not do so against the defendants because none of them are federal employees or

---

[28] The Fifth Amendment states:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject to the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V. It does not appear that Murphy is asserting any double jeopardy claim, violation of his right against self-incrimination, or a takings violation; however, the court notes that the phrase "double jeopardy" is mentioned in the second amended complaint. To the extent Murphy is claiming a double jeopardy violation, "since disciplinary proceedings are not criminal in nature, courts consistently have rejected double jeopardy defenses asserted therein." *In re Oxman*, 437 A.2d 1169, 1173 (Pa. 1981) (citations omitted).

entities. *See B&G Constr. Co., Inc. v. Director, Office of Workers' Compensation Prog.*, 662 F.3d 233, 246 n.14 (3d Cir. 2011) (explaining differences between due process claims under Fifth and Fourteenth Amendments and stating that "the Fifth Amendment applies to actions of the federal government").

### d.     Sixth Amendment Claim

Regarding the Sixth Amendment, the court notes that "although attorney disciplinary proceedings 'ha[ve] consequences which remove [them] from the ordinary run of civil case[s],' they are 'not criminal in nature.'" *In re Surrick*, 338 F.3d 224, 233 (3d Cir. 2003) (quoting *Matter of Abrams*, 521 F.2d 1094, 1099 (3d Cir. 1975)). "It therefore follows that the protections normally afforded criminal defendants are not required here." *Id.* (citations omitted). To the extent that Murphy is claiming that the defendants somehow violated his Sixth Amendment speedy trial rights, this right "has been held to be inapplicable in disciplinary proceedings." *In re Oxman*, 437 A.2d at 1172. The court notes that Murphy makes passing references to his right to compulsory process and to confront the witnesses against him, but he does not plausibly allege how the defendants violated those rights in the second amended complaint and, to the extent that he has attempted to do so, he has not done so in a manner in which the court can understand the precise nature of his claims.[29]

In addition to the foregoing, the court recognizes that Murphy alleges that he lacked notice of information relating to the complainant and the nature of the complaints against him.[30] These allegations are simply implausible based on the information the court has already reviewed in this

---

[29] The court was unable to locate any case in this circuit concluding that the right to confront witnesses apply to attorney disciplinary proceedings. Other circuits appear to be divided on this issue. *See In re Harper*, 725 F.3d 1253, 1260 (10th Cir. 2013) (discussing circuit divide over "the applicability of the right to confrontation in attorney disciplinary proceedings").

[30] *See In re Ruffalo*, 390 U.S. 544 (1968) (concluding that attorney subject to potential discipline must receive notice of nature of charges).

case in addressing Murphy's prior motion for temporary and preliminary injunctive relief and even Murphy's opposition brief where he goes into great detail (albeit in a confusing manner) about the underlying workers' compensation proceedings which ultimately led to the complaints of misconduct against him. He also acknowledges in his second amended complaint that he received the DB-7 notice. Accordingly, Murphy has failed to state a plausible claim for any violation of his Sixth Amendment rights, to the extent such rights are even applicable to the underlying disciplinary proceedings.

e.    Equal Protection Claim

The Fourteenth Amendment prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A plaintiff must identify a similarly situated individual whom the state treated differently to establish an equal protection claim, and the failure to do so warrants dismissal of the claim. *See, e.g., Karns v. Shanahan*, 879 F.3d 504, 521 (3d Cir. 2018) (holding equal protection claim lacked merit, in part, because plaintiffs "point[ed] to no evidence that [the officers] treated similarly situated individuals differently. They d[id] not even identify other individuals who might be similarly situated" (footnote omitted)); *Mann v. Brenner*, 375 F. App'x 232, 238 (3d Cir. 2010) (affirming dismissal of equal protection claim because plaintiff failed to plausibly plead that he was treated differently than other similarly situated people); *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) ("[Plaintiff's] claim must fail because he does not allege the existence of similarly situated individuals—i.e., Borough Managers—who[m the former mayor of Kutztown] treated differently than he treated [plaintiff]." (citation omitted)). "[G]eneral accusations and the invocation of the Equal Protection Clause are not enough." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

Here, the defendants correctly point out that Murphy has failed to include any allegations that he is in a protected class. Defs.' 2d Br. at 21. This failure alone is fatal to his equal protection claim. *See, e.g.*, *Mobley v. Lantz*, Civ. No. 1:13-cv-1804, 2014 WL 3810119, at *17 (M.D. Pa. July 31, 2014) ("We agree that Mobley does not successfully state a traditional equal protection claim as he has not alleged that he is a member of a protected class."). Nonetheless, Murphy's equal protection claim also fails because even though he makes sweeping conclusory allegations of purported equal protection violations, he does not allege or otherwise identify a similarly situated individual that the defendants treated differently. *Hill*, 455 F.3d at 239.

It is possible that Murphy is invoking the "'class of one' theory," which provides that a plaintiff "states a claim for violation of the Equal Protection Clause when he 'alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Hill*, 455 F.3d at 239 (3d Cir. 2006) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). To the extent that Murphy is asserting a "class of one" claim, he must include sufficient allegations showing that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Id.* Nowhere in the second amended complaint does Murphy set forth facts plausibly suggesting that the defendants treated him differently from similarly situated individuals.[31] Again, his only equal protection allegations are conclusory in nature. Accordingly, Murphy has failed to state a plausible claim for an equal protection violation.

f.    Privileges and Immunities Clause of the Fourteenth Amendment

The Privileges and Immunities Clause of the Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall abridge the privileges and immunities of citizens

---

[31] Murphy asserts that he is bringing his action on behalf of all Pennsylvania attorneys, 2d Am. Compl. at 4; therefore, he appears to be alleging that he is in the same situation as all other Pennsylvania attorneys.

of the United States." U.S. Const. amend XIV § 1, cl. 2. As correctly pointed out by the defendants,

Defs.' 2d Br. at 21,

> the Privileges and Immunities Clause of the Fourteenth Amendment "has remained essentially moribund" since the Supreme Court's decision in *The Slaughter-House Cases*, 83 U.S. (16 Wall.) 36, 21 L.Ed. 394 (1872), and the Supreme Court has subsequently relied almost exclusively on the Due Process Clause as the source of unenumerated rights.

*In re Sacred Heart Hosp. of Norristown*, 133 F.3d 237, 244 (3d Cir. 1998); *see Gamble v. United States*, 139 S. Ct. 1960, 1989 (2019) (Thomas, J., concurring) ("Likewise, the Court refuses to reexamine its jurisprudence about the Privileges and Immunities Clause, thereby regulating a clause in the [C]onstitution to be without effect." (citations and internal quotation marks omitted)). Regardless, Murphy fails to plausibly allege or argue how the Privileges and Immunities Clause applies to this case and, as such, the court will dismiss this claim as well for the failure to state a claim.

g.        The First Amendment

The defendants argue that "[t]he Complaint contains general, unspecific assertions – buried in the list of rights Plaintiff maintains have been violated – that the Disciplinary Rules infringe on free speech and the First Amendment." Defs.' 2d Br. at 27. The defendants go on to assert that Murphy has failed to identify the specific Rules or how those Rules violate his First Amendment rights. *Id.* They also claim that Murphy does not even identify the First Amendment theory is he asserting. *Id.*

In response to the defendants' arguments, Murphy appears to try to clarify his First Amendment claims. *See* Pl.'s Br. at 69–70.[32] The court has reviewed Murphy's arguments and cannot discern the claims he is attempting to assert. It appears that he is arguing that because the

---

[32] For reasons unknown, Murphy's submission is missing pages 65 through 68.

Commonwealth Court determined that his allegations about the two Workers Compensation Judges were not false or frivolous, the disciplinary proceedings "violate[] [his] and all other similarly situated persons' fundamental right to free speech within context [sic] of administrative proceedings as well as the fundamental right to redress grievances within administrative proceedings[.]" *Id.* at 69. He appears to also reference the First Amendment's freedom of association, and asserts that "defendants' informal Chapter 87 and formal proceedings which cannot be the subject of any judicial review manifestly violate [his] and all other similarly situated persons' freedom of association[.]" *Id.* at 70.

To put it plainly, this court cannot discern the type of First Amendment claim Murphy is attempting to assert here. It is impossible for one to review the allegations in the second amended complaint and ascertain how the defendants purportedly violated the First Amendment. Murphy's brief adds no clarity to the scope of his claims and the facts supporting those claims. This court does not have the information relating to what occurred before the Commonwealth Court pertaining to Murphy's allegations of judicial misconduct against the two Workers Compensation Judges. Regardless, the court cannot conceive of how the filing of the disciplinary charges against Murphy, when considered in context of whatever happened before the Commonwealth Court, violates his rights to freedom of speech.[33] The court can also not discern how the disciplinary proceedings have affected his right to petition a court for redress of grievances or impaired his freedom to associate. As such, the court is not going to engage in the continued exercise of attempting to guess the precise claims or facts supporting said claims in a matter involving licensed counsel who alleges that he has been practicing law for more than 46 years. Based on the

---

[33] The "freedom of speech [is] not absolute." *Terminello v. Chicago*, 337 U.S. 1, 5 (1949).

allegations in the second amended complaint, Murphy has not asserted a plausible First Amendment claim.

### 6. Sovereign Immunity Under 1 Pa. C.S. § 2310

The defendants also move to dismiss any state law claims because they are entitled to sovereign immunity under Pennsylvania law. Defs.' 2d Br. at 25–26. Although the defendants persuasively argue that they are entitled to sovereign immunity under 1 Pa. C.S. § 2310 because they were "acting within the scope of their duties" and this immunity covers individual and official capacity claims, the court need not address this argument because it does not appear that Murphy is asserting any state law claims. In this regard, despite Murphy's laundry list of alleged violations, he does not appear to mention a state law cause of action. Although Murphy is proceeding *pro se*, he is a licensed attorney, and the court should not have to speculate whether he is asserting a particular state law cause of action. Even in his lengthy response to the motion to dismiss, he does not specifically mention a state law cause of action that he is attempting to assert in this case. Accordingly, the court will not address the defendants' arguments relating to state law immunity.

### D. <u>Leave to Amend</u>

While recognizing that Murphy is not the typical *pro se* plaintiff, a district court should generally provide a *pro se* plaintiff with leave to amend unless amending would be inequitable or futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule). Also, "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). Here, the instant second amended complaint is Murphy's third bite at the proverbial apple in his attempt to assert some plausible claim that he can maintain in this court. His amendments to

his original complaint have not improved the form or substance of his pleading. Based on the construction of these documents, Murphy's seeming inability to allege facts without clouding them in rambling conclusions of law, his inability to articulate his claims and the facts supporting those claims in a cogent manner, his seeming willingness to omit numerous facts that the court has already observed in the record despite their relevance to this litigation and, most importantly, the court's resolution of the motion to dismiss as set forth in this opinion and separately filed order, the court will not allow Murphy yet another chance to file an amended complaint because doing so would be futile.

### E.  Motion for a Preliminary Injunction

As indicated above, for the reasons set forth in this opinion, including this court abstaining from addressing any claims for prospective injunctive or declaratory relief under *Younger*, and the dismissal of the second amended complaint without leave to amend, there are no grounds upon which the court would grant Murphy's request for injunctive relief. The court's analysis in this case shows, at a minimum, that Murphy lacks a reasonable likelihood of success on the merits. Accordingly, the court must deny Murphy's request for a preliminary injunction.

### III.  CONCLUSION

For the reasons set forth above, the court will grant the motion to dismiss to the extent that the defendants argue that (1) the court should abstain from presiding over Murphy's claims for declaratory and injunctive relief, (2) the Eleventh Amendment deprives the court of subject-matter jurisdiction over Murphy's federal claims against the ODC, Disciplinary Board, and the individual defendants in their official capacities to the extent he seeks monetary damages, (3) absolute prosecutorial immunity prevents Murphy from asserting claims against Killion, Gottsch, Hernandez, Sodroski, and Gilson at least for the period from the commencement of formal

proceedings in December 2016, (4) quasi-judicial immunity prevents Murphy from asserting claims against the individual defendants, particularly the members of the Disciplinary Board, *i.e.* Cohen, Rassias, Fitzsimons, Cali, LeHocky, and Penny, and (5) Murphy has failed to state a plausible claim for relief for a violation of his rights under the First, Fifth, Sixth, and Fourteenth Amendments. The court's disposition of these arguments results in the dismissal of all claims in the second amended complaint. The court will not provide Murphy with leave to file another amended complaint because doing so would be futile due to his inability to properly plead any cogent claims and the court's belief that he will not be able to do so in a third amended complaint. In addition, the court denies Murphy's motion for temporary and preliminary injunctive relief because Murphy no longer has claims pending in this court and even if he did, the court would abstain from resolving any claims for injunctive relief under *Younger* and he has otherwise failed to demonstrate a likelihood of success on the merits.

The court will issue a separate order.

BY THE COURT:

/s/ *Edward G. Smith* _
EDWARD G. SMITH, J.